UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FLOYD COWART,

                               Plaintiff,

         v.

MICHAEL McGINNIS, MICHAEL CORCORAN,
JODI LITWILER, ROBERT BALDWIN, LUCIEN
LeCLAIRE, JR., WAYNE WILHELM, PAT GILL,
A. PRACK, DAVID BARRINGER, THEODORE
PETTIGRASS, G. MONTGNEGRO, and PEDRO
DIAZ,

                            Defendants.
_____

**DECISION**
**and**
**ORDER**

**02-CV-817F**
**(consent)**

APPEARANCES:        FLOYD COWART, *Pro Se*
                            81-A-3652
                            Five Points Correctional Facility
                            Box 119
                            Romulus, New York 14541

                            ANDREW M. CUOMO
                            New York Attorney General
                            Attorney for Defendants
                            KIM S. MURPHY
                            Assistant Attorney General, of Counsel
                            107 Delaware Avenue
                            Buffalo, New York 14202

## <u>JURISDICTION</u>

The parties to this action consented to proceed before the undersigned on

February 25, 2003.  The matter is presently before the court on Defendants' motion for

summary judgment (Doc. No. 63), filed January 13, 2006.

### BACKGROUND and FACTS[1]

Plaintiff Floyd Cowart ("Plaintiff") commenced this civil rights action on November 18, 2002, seeking monetary relief pursuant to 42 U.S.C. §§ 1981 and 1983 for alleged violations of his right to due process under the Fifth and Fourteenth Amendments.[2] Complaint, Legal Claim and Injury, ¶¶ 1-3, 5-7.  Plaintiff specifically alleges that while he was confined in the Special Housing Unit ("SHU") at Southport Correctional Facility ("Southport"), Defendants denied his request for a wide tooth comb which Plaintiff maintains is necessary "to properly groom his 6" Afro" [sic] hair style.  Complaint, Facts ¶ 1.  Plaintiff maintains that he was provided with a wide tooth comb when he was incarcerated at Clinton Correctional Facility, id., but that upon being moved to Southport, he was provided only with a small tooth plastic comb that "was designed for thin straight hair" most commonly found only on white inmates.  Complaint, Facts ¶ 4. The grievance Plaintiff filed with the Inmate Grievance Resolution Committed ("IRGC"), regarding Plaintiff's wide-tooth comb request was denied on the basis that the 5" Aristocrat fine-tooth plastic comb ("the Aristocrat comb") provided to Plaintiff complied with Department of Corrections ("DOCS") Directive #4933 ("Directive # 4933) which requires only that prison facility inmates housed in SHU be provided with a "plastic comb."  Complaint, Facts ¶ 10.  Plaintiff maintains that Defendants' interpretation of Directive # 4933 as permitting the provision of the Aristocrat tooth comb for inmates such as Plaintiff and other inmates who have hair of the texture and length "found in

---

[1] The fact statement is taken from the pleadings and motion papers filed in this action.

[2] In a Decision and Order filed March 31, 2005, the court granted Plaintiff's request to withdraw claims asserted pursuant to 42 U.S.C. § 1985(3) and 1986.

African Americans and Hispanics" establishes Defendants acted with racial animus and discrimination toward Plaintiff in denying his request for a wide tooth comb.  Complaint, Claims for Relief ¶¶ 7-8.  As such, Plaintiff also seeks a declaration that Directive # 4933 is unconstitutional.

On January 13, 2006, Defendants filed the instant motion for summary judgment (Doc. No. 63) ("Defendants' Motion"), supported by a Statement of Facts in Support of Defendants' Motion for Summary Judgment (Doc. No. 64) ("Defendants' Statement of Facts"), a Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Doc. No. 65) ("Defendants' Memorandum"), and Declarations of Michael Corcoran (Doc. No. 66) ("Corcoran Declaration"), with attached exhibits A through C ("Corcoran Declaration Exh(s). __"), Michael McGinnis (Doc. No. 67) ("McGinnis Declaration"), with attached exhibits A through H ("McGinnis Declaration Exh(s). __"), Jodi Litwiler (Doc. No. 68) ("Litwiler Declaration"), with attached exhibits A and B ("Litwiler Declaration Exh(s). __"), Al Prack (Doc. No. 69) ("Prack Declaration"), with attached exhibits A through C ("Prack Declaration Exh(s). __"), Lucien LeClaire, Jr. (Doc. No. 70) ("LeClaire Declaration"), with attached exhibits A through C ("LeClaire Declaration Exh(s). __"), and Wayne Wilhelm (Doc. No. 71) ("Wilhelm Declaration"), with attached exhibits A through E ("Wilhelm Declaration Exh(s). __").  In opposition to summary judgment, on May 15, 2006, Plaintiff filed a Reply Affirmation and Memorandum of Law (Doc. No. 78) ("Plaintiff's Response"), attached to which is a volume of exhibits A through T1 ("Plaintiff's Exh(s). __").  Oral argument was deemed unnecessary.

Based on the following, Defendants' motion for summary judgment (Doc. No. 63)

is GRANTED.

**DISCUSSION**

**1.      Summary Judgment**

Defendants have moved for summary judgment on all Plaintiff's claims, asserting

that Plaintiff presents only conclusory assertions that Directive # 4933 is

unconstitutional, Defendants' Memorandum at 9-10, that Plaintiff cannot establish his

equal protection claim because the record demonstrates that the denial of a wide-tooth

comb is related to a legitimate penological security interest outweighing any disparate

impact imposed by Directive # 4933 on African-American and Hispanic prison inmates,

*id*. at 10-17, that Plaintiff does not have a protected liberty interest in a wide tooth comb

as required to support Plaintiff's due process claim, *id*. at 17-19, and that Plaintiff's

claim under 42 U.S.C. § 1981, which applies only to the formation of contracts, is

without merit.  *Id*. at 21.  Defendants alternatively maintain they are qualifiedly immune

from liability on Plaintiff's claim, Defendants' Memorandum at 19-21, that Plaintiff is not

entitled to compensatory relief or punitive damages on his § 1983 claim, *id*. at 22-23,

and that the claims should be dismissed as against all Defendants for lack of personal

involvement.  *Id*. at 23-25.

Plaintiff, in opposing summary judgment, maintains that evidence in the record

establishes that Directive # 4933 is unconstitutional because Defendants have failed to

point to any evidence supporting Defendants' assertion that wide tooth combs pose a

security threat, Plaintiff's Response at 2-9, that the denial of grooming instruments that

are intended for the type of hair and hairstyles found on many African-American and

4

Hispanic prison inmates is an equal protection violation, requiring such inmates to abandon their "heritage" and religious beliefs, *id.* at 10-19; that insofar as Directive # 4933 does not specify the type of plastic comb permitted, DOCS officials are not authorized to interpret the directive as permitting only one specific type of comb, *id.* at 19-22, and that Plaintiff has asserted a claims pursuant to 42 U.S.C. § 1981 without any particularization.  *Id.* at 23.  With regard to Defendants' alternative arguments, Plaintiff argues that Defendants are not entitled to qualified immunity because the right to a basic human need to maintain dignity and well being was clearly established for prisoners to whom Defendants denied Plaintiff use of the wide tooth comb, Plaintiff's Response at 22, asserts he is entitled to both compensatory and punitive damages on his claims, *id.* at 23, and maintains the personal involvement of each Defendant has been established by the record.  *Id.* at 23-24.  Finally, Plaintiff questions whether Assistant Attorney General Michael Siragusa, who previously represented Defendants in this action, is the son of District Judge Charles J. Siragusa and, if so, seeks an order either directing that the case be assigned to another Assistant Attorney General, or transferring the action to another district. *Id.* at 24-25.

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based

upon any source from which a reasonable inference in the non-moving party's favor

may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S.

at 322.

Once a party moving for summary judgment has made a properly supported

showing as to the absence of any genuine issue as to all material facts, the nonmoving

party must, to defeat summary judgment, come forward with evidence that would be

sufficient to support a jury verdict in its favor and "may not simply rely on conclusory

statements or on contentions that the affidavits supporting the motion are not credible."

*Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995)

(citing cases). Rather, Fed. R. Civ. P. 56(e) requires that

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the
> adverse party's pleading, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts showing that there is
> a genuine issue for trial. If the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against the adverse party.

Furthermore, "factual issues created solely by an affidavit crafted to oppose a summary

judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84

F.3d 614, 619 (2d Cir.1996). As stated, in the instant case Plaintiff has not filed

anything opposing Defendants' motion. Plaintiff thus has failed to challenged the

accuracy of any evidence on which Defendants rely in support of summary judgment.

Furthermore, by failing to file a responding statement of disputed material facts

pursuant to this court's Local Rule 56.1, Plaintiff is deemed to have admitted the

veracity of the statements contained in Defendants' Statement of Facts. Local Rule

56.1(c) ("All material facts set forth in the statement [of undisputed facts] required to be

served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.") (bracketed text added).

Defendants are alleged to have violated Plaintiff's civil rights under 42 U.S.C. § 1983, pursuant to which an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States.  42 U.S.C. § 1983.  Section 1983, however, "'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Id.*  (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, *supra*, at 140).  Here, Plaintiff's claims that the denial of a wide tooth comb violates his due process rights under the Fifth and Fourteenth Amendment, and his equal protection rights under the Fourteenth Amendment.  As discussed, *infra*, Plaintiff's claims are without merit.


2.      **Constitutionality of Directive § 4933**

As relevant to this action, Directive § 4933 provides that within 24 hours of admission into SHU, "each inmate will be issued the following State-issue toilet articles, which will be replaced as needed: . . . ; (2) 1 plastic comb;. . . . " Directive # 4933 § 302.2(c), McGinnis Declaration Exh. A.  Plaintiff attacks Directive § 4933 as unconstitutional insofar as it requires only that a "plastic comb" be issued to each inmate for grooming hair, and makes no provision for different combs to be issued

depending on the type of hair and hairstyle a particular inmate has.  Defendants

maintain that although Directive § 4933 does not provide for different types of plastic

combs to be issued to each inmate based on each inmate's hair type, texture, or style,

because Directive § 4933 is devoid of any racially discriminatory language, the directive

is not, on its face, unconstitutional.  Defendants' Memorandum at 9.  Rather, each

correctional facility is to determine what type of plastic comb is suitable for distribution

to the inmates housed therein, and Plaintiff's assertion that Directive § 4933 is only a

conclusory assertion insufficient to avoid summary judgment.  *Id*.

　　　　Plaintiff argues in opposition that because the prison inmate population is

comprised of people of various races, and given that the 5" Aristocrat fine-tooth comb is

suitable to groom only the type of hair found on white inmates, "[t]he exclusion of wide-

tooth combs is unconstitutional, irrational and discriminatory in nature and has no

foundation in law or in fact."  Plaintiff's Response at 3.  In attempting to demonstrate

how the Aristocrat comb is not suitable for grooming the hair of a large portion of the

prison inmates, *i.e.*, inmates who are not white but, instead, are African-American or

Hispanic, Plaintiff references numerous articles and Internet web sites discussing

appropriate grooming techniques for thick, curly hair, and explains that while housed at

other correctional facilities, Plaintiff and other inmates were allowed to have a wide-

tooth comb or pick more suited to grooming Plaintiff's afro-styled hair.  *Id*. at 4-9;

Plaintiffs' Exhs. C, D , F, H, I, J, K, and L.

　　　　Plaintiff challenges to the constitutionality of Directive # 4933 under the

Fourteenth Amendment's Equal Protection Clause which provides that "[n]o state shall .

. . deny to any person within its jurisdiction the equal protection of the laws."  U.S.

CONST., amend. XIV, § 1.  The "central purpose [of The Equal Protection Clause] is to prevent the States form purposefully discriminating between individuals on the basis of race."  *Shaw v. Reno*, 509 U.S. 630, 642 (1993) (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976)) (bracketed material added).  "Law that explicitly distinguish between individuals on racial grounds fall within the core of that prohibition."  *Id*.

Where racial classification appears on the face of a law, inquiry into the legislative purpose is unnecessary.  *Shaw*, 509 U.S. at 642.  Such express racial classifications are "immediately suspect because, '[a]bsent searching judicial inquiry . . ., there is simply no way of determining what classifications are 'benign' or 'remedial' and what classifications are in fact motivated by illegitimate notions of racial inferiority or simple racial politics.'"  *Id*. at 642-43 (quoting *Richmond v. J.A. Croson, Co.*, 488 U.S. 469, 493 (1989)).  Moreover, "[c]lassifications of citizens solely on the basis of race 'are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality.'"  *Id*. at 643 (quoting *Hirabayashi v. United States*, 320 U.S. 81, 100 (1943)).  As such, state legislation that expressly distinguishes among citizens based on race must be "narrowly tailored to further a compelling governmental interest."  *Id*. (citing cases).

The above principles apply "not only to legislation containing explicit racial distinctions, but also to those 'rare' statutes that, although race neutral, are, on their face, 'unexplainable on grounds other than race.'"  *Shaw*, 509 U.S. at 643 (quoting *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977)).  Any racial classification, "regardless of purported motivation, is presumptively invalid, and can be upheld only upon an extraordinary justification," *Personnel*

*Administrator of Mass. v. Feeney*, 442 U.S. 256, 272 (1979) (citing Brown v. Board of Education, 347 U.S. 483 (1954)), regardless of whether a classification "is ostensibly neutral but is an obvious pretext for racial discrimination." *Shaw*, 509 U.S. at 644 (citing cases).

In the instant case, a plain reading of the text of Directive # 4933 reveals nothing that, on its face, could be construed as racially categorizing inmates so as to subject inmates to disparate treatment based on their race. As such, Directive # 4933 is, on its face, constitutional. Nevertheless, that a law may be constitutional on its face does not preclude a finding that the law, as applied, is unconstitutional.

Plaintiff maintains that Directive # 4933 is unconstitutional because its application results in a disparate effect on African-American and Hispanic inmates in violation of the Fourteenth Amendment's Equal Protection Clause. Defendants do not deny that the 5" Aristrocrat fine-tooth comb may not be an appropriate grooming instrument for afro hairstyles, but maintain that because Southport is solely a Special Housing Unit ("SHU") facility, providing housing only for inmates with records of serious disciplinary violations including dangerous and assaultive behavior and continued refusal or failure to comply with DOCS or facility rules, Directive # 4933 has consistently been interpreted by DOCS as requiring only the Aristocrat comb because other combs, including the wide-tooth combs or picks Plaintiff desires, are made of hard plastic and can be more readily fashioned into dangerous instruments capable of inflicting serious injuries. Defendants' Memorandum at 4; McGinnis Declaration ¶¶ 19-20. As such, Defendants' interpretation of Directive # 4933 represents a legitimate penological interest in maintaining Southport's security. Defendants' Memorandum at 12-13.

Plaintiff does not dispute that a wide tooth comb can more readily be fashioned into a weapon than the Aristocrat comb; rather, Plaintiff maintains this argument is without merit because inmates at other penological institutions within the DOCS system are undisputably permitted to use or possess such grooming instruments, thereby demonstrating that Defendants' refusal to permit inmates at Southport to use or possess a wide tooth comb or pick is motivated by a desire to discriminate against non-white inmates.  Plaintiff's Response ¶¶ 8-12, 14, 24-29, 32-37, 39, 44-45, 50.

To prove a regulation has a discriminatory intent, Plaintiff must do more than demonstrate the regulation has a disproportionate impact on a particular group.  *Village of Arlington Heights v. Metro. Housing Development Corp.*, 429 U.S. 252, 266 (1977).  Although the disproportionate impact of a regulation provides some evidence of discriminatory intent, such evidence is not determinative absent any evidence that the challenged regulation lacks any plausible justification. *Id*. (citing *Yick Wo v. Hopkins*, 118 U.S. 356 1886)).  Relevantly, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  The Supreme Court has "determined that prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).  This less restrictive standard has been adopted to ensure the ability of correctional officials "*to anticipate security problems* and to adopt innovative solutions to the intractable problems of prison administration." *Id*. (citing *Turner*, 482 U.S. at 89) (italics added).

A four part test is used to evaluate whether a prison regulation impermissible "impinges on inmates' constitutional rights," specifically, the court must inquire as to (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) whether alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on prison guards and other inmates, and on the allocation of prison resources generally; and (4) the absence of ready alternatives.  *Turner*, 482 U.S. at 89 (citing cases).

The burden is on Plaintiff to show the irrationality of the prison regulation. *Fromer v. Scully*, 874 F.2d 69, 74 (2d Cir. 1989).  In the instant case, however, Plaintiff has not provided any evidence disputing Defendants' assertion that the decision to permit only the Aristocrat comb is related to a legitimate penological interest, given that Southport provides only SHU housing for the most dangerous and assaultive inmates, and that wide tooth picks or combs are made of hard plastic and can be more readily fashioned into dangerous weapons to be used against correctional officials or to escape.  As for Plaintiff's assertion, Plaintiff's Response ¶ 22, that Defendants have failed to point to any actual incident in which a wide tooth comb or pick was so fashioned into a weapon, not only does Plaintiff bear the burden of proof on this issue, *Fromer*, 874 F.2d at 74, the Supreme Court's observation that a less restrictive standard has been adopted to ensure the ability of correctional officials "*to anticipate security problems* and to adopt innovative solutions to the intractable problems of prison administration*,*" *O'Lone*, 482 U.S. at 349, strongly supports a conclusion that Defendants were not required to wait until such occurrence, perhaps resulting in severe

12

injury to a correctional officer, before determining to ban wide tooth combs and picks. Plaintiff's claim therefore fails on this ground.

Plaintiff also challenges the constitutionality of Directive # 4933 under the Due Process Clauses of the Fifth and Fourteenth Amendment, arguing that the Directive # 4933, as interpreted by Defendants, deprives Plaintiff of the a protected liberty interest. Specifically, Plaintiff maintains that because the Aristocrat comb is insufficient to permit him to properly groom his 6" afro hairstyle, and because Plaintiff's religious beliefs as a practicing Muslim require Plaintiff's hair not be disheveled, Plaintiff must either cut his hair short or wear it in dreadlocks, rather than in Plaintiff's preferred longer afro-style. Plaintiff's Response ¶¶ 11, 42, 46 and n. 7; Plaintiff's Exh. H.  Defendants argue in support of summary judgment that Plaintiff has no protected liberty interest in having a wide-tooth comb or pick.  Defendants' Memorandum at 17-19.  In opposition, Plaintiff asserts that because Directive # 4933 specifies only that inmates housed in SHU are to be provided with a "plastic comb," Directive # 4933 does not preclude the provision of a plastic wide tooth comb or pick, nor does it provide only for Aristocrat comb.  Plaintiff's Response ¶¶ 48-55.  Plaintiff further asserts that by providing wide tooth combs and picks to inmates at other correctional facilities, DOCS has created a liberty interest in such grooming instruments.  *Id*. ¶¶ 15-21, 32, 38.

Preliminarily, the court finds that insofar as Plaintiff's due process argument is asserted under the Fifth Amendment, the Fifth Amendment applies only to actions by the federal government.  *See Betts v. Brady*, 316 U.S. 455, 462 (1942) ("Due process of law is secured against invasion by the federal Government by the Fifth Amendment, and is safeguarded against State action in identical words by the Fourteenth

[Amendment].") (bracketed text added), *overruled on other grounds by Gideon v. Wainwright*, 372 U.S. 335 (1963).  The court thus considers Plaintiff's due process argument only under the Fourteenth Amendment.

To demonstrate entitlement to relief under the Fourteenth Amendment's Due Process Clause, Plaintiff must establish that the denial of a wide-tooth plastic comb or pick is "an atypical and significant hardship," from which New York, by regulation or statute, had granted Plaintiff a "protected liberty interest in remaining free."  *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (quoting *Sandin* v. Conner, 515 U.S. 472, 484 (1995), and *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)).

At least one court has held that prison regulations prohibiting use of certain hair styling instruments does not violate an inmate's due process rights.  In *Betts v. McCaughtry*, the court held that prison rules prohibiting the use of emery boards, hair dryers and curling irons, wearing carved hairstyles promoting gang-related identification, long fingernails, and the wearing of sunglasses and stocking caps indoors were not arbitrary deprivations of prisoners' liberty interests in violation of the Due Process Clause because the challenged regulations were reasonably related to legitimate security concerns.  *Betts v. McCaughtry*, 827 F.Supp. 1400, 1406, 1408-09 (W.D.Wis. 1993).  Further, the Supreme Court has upheld against a Fourteenth Amendment due process challenge a hair grooming regulation imposing restrictions on hairstyles worn by municipal police officers because the regulation was not so irrational as to be branded "arbitrary" and a deprivation of the officer's liberty interest in the freedom to choose a particular hairstyle.  *Kelley v. Johnson*, 425 U.S. 238, 247–48 (1976).

14

In the instant case, Plaintiff points to nothing indicating New York has granted Plaintiff any protected liberty interest in possessing a particular hair grooming instrument, or wearing his hair in a particular style.  Despite Plaintiff's assertion that as a practicing Muslim, he is required to keep his hair neatly groomed and not disheveled, Plaintiff's Response n. 7; Plaintiff's Exh. E, Plaintiff points to no tenet of Islam requiring him to maintain a 6" afro hairstyle.  Further, that DOCS allows its facilities to issue wide tooth combs does not result from either regulation or statute sufficient to establish a protected liberty interest for prisoners in general regardless of the security considerations relevant to a particular facility such as Southport.

Plaintiff's claims for due process violations and discrimination based on his religious beliefs are therefore without merit.


**3.     42 U.S.C. § 1981**

Plaintiff alleges that the denial of a proper comb with which to groom his afro hairstyle constitutes a violation of 42 U.S.C. § 1981 ("§ 1981").  Complaint, Legal Claim and Injury, ¶¶ 1-3, 5-7.  Defendants argue in support of summary judgment that § 1981 applies only to the formation of contracts and is thus inapplicable to the instant action.  Defendants' Memorandum at 21.  In opposition to summary judgment, Plaintiff states that in light of the legal and factual assertions presented in the instant case, Plaintiff has "met the standard" for a § 1981 claim and declines to provide addition argument on this point "[f]or the sake of brevity."  Plaintiff's Response at 23.

As relevant, 42 U.S.C. § 1981 ("§ 1981")  provides that

[a]ll persons within the jurisdiction of the United States shall have the same right

15

in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, *and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens*, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a) (italics added).

"The first and most frequently invoked portion of § 1981 is the 'contracts clause,' which forbids discrimination in the making and enforcement of contracts." *Spencer v. Casavilla*, 839 F.Supp. 1014, 1017 (S.D.N.Y. 1993).  The plain language of § 1981 nevertheless also provides for a cause of action based not only on the formation of contracts, but also, under the "equal benefits clause," on an alleged denial or interference with the "full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981(a). Although the Supreme Court has interpreted only the "contracts clause" of § 1981, lower courts have nevertheless "recognized causes of action under other portions of § 1981, including the 'equal benefit' and 'like punishment' clauses."  *Spencer*, 839 F.Supp. at 1017 (citing *Mahone v. Waddle*, 564 F.2d 1018, 1027-29 (3d Cir. 1977), *cert. denied sub nom. Pittsburgh v. Mahone*, 438 U.S. 904 (1978); *Franceschi v. Hyatt Corp.*, 782 F.Supp. 712, 724 (D.P.R. 1992); *Hawk v. Perillo*, 642 F.Supp. 380, 392 (N.D.Ill. 1985); and *Central Presbyterian Church v. Black Liberation Front*, 303 F.Supp. 894, 901 (E.D.Mo. 1969)).  The "dearth of case law regarding the 'equal benefit' clause" of §1981 has nonetheless been acknowledged by the courts.  *Pierre v. J.C. Penney Company, Inc.*, 340 F.Supp.2d 308, 310 (E.D.N.Y. 2004); *Felton v. Maines Cash & Carry, Inc.*, 2001 WL 118594, *5 (N.D.N.Y. Feb. 2, 2001).

The elements of a § 1981 equal benefit claim include "(1) the plaintiff is a

member of a racial minority; (2) an intent to discriminate on the basis of race by the

defendant; and (3) the discrimination concerned one or more of the activities

enumerated in the statute." *Mian v. Donaldson, Lufkin & Jenrette*, 7 F.3d 1085, 1087

(2d Cir. 1993).  Further, the Second Circuit has broadly construed § 1981's equal

benefit clause as applying to "racially motivated torts that deprive a plaintiff of the equal

protection of laws or proceedings for the security of persons and property." *Phillip v.*

*University of Rochester*, 316 F.3d 291, 297-98 (2d Cir. 2003) (holding college student

plaintiffs sufficiently pleaded cause of action under § 1981's equal benefits clause by

alleging university security officers had police remove African-American students

socializing in library's lobby from university property, but would not have taken same

action had removed students been white).  Although the Second Circuit declined to

specify what "laws or proceedings" protect "the security of persons and property," *id*. at

298, the allegations in the instant action that Defendants' interpreted DOCS Directive §

4933 in such a way as to discriminate against Plaintiff based on his race may, without

more, be within the ambit of such laws or proceedings.  *See Wray v. City of New York*,

490 F.3d 189, 193 (2d Cir. 2007) (stating, in context of § 1983 action, that "[o]ur

analysis of constitutional torts - like any other tort - is guided by common-law tort

principles of tort.").

    As such, a violation of § 1981's equal benefit clause, requires that at least some

of Defendants' challenged actions constituted a tort, here, a civil rights violation

enforceable under § 1983.  *See Frierson-Harris v. Hough*, 2006 WL 298658, * 7

(S.D.N.Y. Feb. 7, 2006) (holding plaintiff failed to state claim for racial discrimination

under § 1981's equal benefit clause where plaintiff alleged no facts which, if true, would

constitute a violation of any other laws).  In the instant case, as discussed, Plaintiff has

failed to establish that any of Defendants' conduct constituted a civil rights violation

actionable under § 1983.  Discussion, *supra*, at 7-15.  Absent such predicate § 1983

violation, or any other tort, Plaintiff's § 1981 claim also fails.  *Id*.


**4.     Miscellaneous**

Because the undersigned is granting summary judgment in favor of Defendants

on the merits of Plaintiff's claims pursuant to 42 U.S.C. §§ 1981 and 1983, the court

does not consider Defendants' alternative arguments for qualified immunity, lack of

personal involvement, or the availability of compensatory and punitive damages.

Furthermore, insofar as Plaintiff, based on his belief that Assistant Attorney General

Michael Siragusa is the son of District Judge Charles J. Siragusa, seeks an order either

directing this action be reassigned to another Assistant Attorney General, or transferring

the matter to a different district court, Plaintiff is advised that the matter has already

been reassigned to Assistant Attorney General Kim Murphy, notwithstanding that

Michael Siragusa is not related to Judge Siragusa.

**CONCLUSION**

Based on the foregoing, Defendants' motion (Doc. No. 63) is GRANTED.  The

Clerk of the Court is directed to close the file.

Any petition for permission to appeal with the Circuit Clerk, United States Court

of Appeals for the Second Circuit, New York, New York, must be filed within thirty (30)

days of the date of judgment in this action.  *See* Fed.R.App. 4(a)(1)(A).  Requests to

proceed on appeal as a poor person must be filed with the United States Court of

Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the

Federal Rules of Appellate Procedure.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      November 15, 2007
            Buffalo, New York